1
2
3
4
5

**KELLER ROHRBACK L.L.P.**
Gary A. Gotto, No. 007401
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com

6
7

*Local Counsel for Plaintiff West Palm Beach*
    *Police Pension Fund*

8

*[Additional Counsel listed on Signature Page]*

9
10

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

11
12

West Palm Beach Police Pension Fund,
Individually and on Behalf of All Others
Similarly Situated,

13
14
15

                    Plaintiff,

            vs.

16
17

Leslie's, Inc., Michael R. Egeck, and
Steven M. Weddell,

18

                    Defendants.

Case No.:

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

DEMAND FOR JURY TRIAL

19
20
21
22
23
24
25
26
27
28

Plaintiff West Palm Beach Police Pension Fund ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Leslie's, Inc. ("Leslie's" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on the Leslie's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons or entities who purchased Leslie's common stock between February 5, 2021 and July 13, 2023, inclusive (the "Class Period") against Leslie's and certain of its officers (collectively "Defendants") seeking to pursue remedies under the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a, 78j(b), and 78t(a) (the "Exchange Act").

2.     Leslie's provides pool supplies and related equipment to end consumers, both residential and professional. Approximately 80% of the Company's offerings are "non-discretionary" products essential to the care of pools and spas, such as chemicals, equipment, cleaning accessories, and parts. Leslie's SEC filings specifically state that "[d]ue to the non-discretionary nature of our products and services, our business has historically delivered strong, uninterrupted growth and profitability in all market environments[.]" As a result of the Company's "highly predictable, recurring revenue model," Leslie's was able to sustain 59 consecutive years of sales growth since its inception in 1963.

1

3.      Leslie's became a publicly traded company on October 29, 2020.  At the time, the pool maintenance industry was experiencing a boom brought about by the COVID-19 pandemic and increased consumer demand for at-home activities including swimming pools and spas.  Soon thereafter, the market price of Trichlor—a chlorine-based chemical necessary for pool maintenance—skyrocketed as supply chain issues arising from the pandemic, as well as a fire at one of the leading chlorine producing plants in the United States in the summer of 2020, severely limited the availability of essential pool chemicals.

4.      Undisclosed to investors, throughout the Class Period, Leslie's customers were purchasing more chemicals than necessary, at significantly inflated prices, to stockpile the pool chemicals in case of a chlorine shortage.  Rather than disclose that its impressive sales growth was based on artificial demand and excess panic buying, the Company claimed its growth initiatives were responsible for the impressive financial results and produced "healthy ongoing consumer demand" that was "durable" and "showed no signs of slowing."

5.      In Leslie's first fiscal quarter of 2022, which corresponds to the late calendar year of 2021,[1] Defendants capitalized on the chemical shortages by sending letters to a significant portion of its customer-base noting the Company could not "guarantee product availability," and urging customers to purchase supplies while the Company had it on-hand. The letter had its intended effect of sustaining the large volume purchasing and customer stockpiling.  Nonetheless, Defendants continued to tell investors that Leslie's had "very durable" and "recurring demand" and that Defendants "just haven't seen any indication of any meaningful pull-forward" customer purchasing.

6.      As a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects during the Class Period were materially false and/or misleading.

---

[1] The Company's fiscal year ends on the Saturday closest to September 30th, thus the fiscal years for 2022, 2021, and 2020 ended on October 1, 2022, October 2, 2021, and October 3, 2020, respectively.

7.     Investors only learned the truth about the reasons for Leslie's impressive but unsustainable results after the financial markets closed on July 13, 2023, when the Company pre-released preliminary results for the third quarter of 2023.  Specifically, Leslie's revealed that sales in the third quarter of 2023 had declined by a staggering 12%, the Company's earnings per share for the quarter was 42% below analysts' estimates, and adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") was now between $124 to $128 million, well below the prior forecast of $197 million. Additionally, after reaffirming its fiscal 2023 guidance the previous two quarters, Leslie's abruptly slashed its financial outlook by up to a staggering 60% for the remainder of the year.  As an explanation, the Company revealed that "consumers entered the pool season with a greater than normal amount of chemicals leftover from last year," resulting in reduced purchasing.  In addition, as part of this pre-release and the sudden drop in guidance, Leslie's announced that its Chief Financial Officer ("CFO") Steven M. Weddell would be stepping down from his post effective August 7, 2023.

8.     On this news, Leslie's stock price fell more than 29%, from a closing price of $9.52 per share on July 13, 2023, to a closing price of $6.70 per share on July 14, 2023, and continued to fall another 18% the next trading day to close at $5.46 per share on July 17, 2023.  Analysts were "surprised by everything" in the pre-release, including "the magnitude of the comp store sales decline" and "the degree of excess inventory that customers are carrying," and noted the "Shocking Prerelease" was "Well Below [Wall] Street."  In fact, analysts took aim at management themselves, noting that "management's credibility will need to be restored after the CFO change."

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Leslie's is headquartered in this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14.     Plaintiff West Palm Beach Police Pension Fund is a public pension fund based in West Palm Beach, Florida that provides retirement benefits for active and retired police officers and their beneficiaries.  As of September 30, 2022, the fund oversaw assets under management in excess of $400 million on behalf of approximately 550 active and retired participants.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Leslie's common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Leslie's is incorporated under the laws of Delaware, with its principal executive offices located in Phoenix, Arizona. The Company's common stock trades on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "LESL."

16.     Defendant Michael R. Egeck ("Egeck") has served as the Company's Chief Executive Officer ("CEO") and Director since February 2020.

17.     Defendant Steven M. Weddell ("Weddell") served as the Company's CFO from June 2015 to August 7, 2023, and now serves as a Special Advisor to the Company until December 31, 2023.

18.     Defendants Egeck and Weddell (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, shareholder letters, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

19.     The Company and the Individual Defendants are collectively referred to as the "Defendants."

### SUBSTANTIVE ALLEGATIONS

#### Background

20.     Leslie's, founded in 1963 and based in Phoenix, Arizona, is the largest retailer of swimming pool supplies and related products in the United States. Leslie's sells a full range of supplies for pool maintenance to both residential and professional consumers,

consisting of chemicals, equipment, cleaning accessories, as well as installation and repair services for pool and spa equipment. Many of these products are considered non-discretionary and are essential for customers to continue proper maintenance of their pools and spas. Unsurprisingly, the Company historically had a seasonal sales cycle with 75% of its sales and earnings coming in the third and fourth fiscal quarters, *i.e.*, during the peak months of pool and spa use (April through September).

21.     As Leslie's SEC filings describe, the pool and spa care industry is one of the most fundamentally attractive consumer categories given its scale, predictability, and growth outlook. Since neglecting pool maintenance is not a viable option for consumers, as it can result in equipment failure, structural damage, or other costly issues, Leslie's benefits from an "annuity-like stream of demand for the chemicals and products necessary to properly maintain a pool or spa," which leads to "a highly predictable, recurring revenue model[.]" Additionally, due to the non-discretionary nature of its products, Leslie's touted that it "historically delivered strong, uninterrupted growth and profitability in all market environments," including throughout the COVID-19 pandemic.

22.     In 2021, as the supply of Trichlor was becoming scarce due to supply chain disruptions from the pandemic, as well as a fire at one of the main chlorine producing plants in the United States, Leslie's customers began purchasing more chemicals than usual, at significantly higher prices, leading to record growth for the Company. However, instead of revealing that the impressive sales growth was based on artificial demand by customers' stockpiling in case of a chlorine shortage, the Company claimed its growth initiatives were responsible for its record financial results.

### Defendants' Materially False and Misleading Statements <u>Issued During the Class Period</u>

23.     The Class Period begins on February 5, 2021. After the markets closed the prior day, Leslie's issued a press release announcing its financial results for the first quarter of 2021 ended January 2, 2021. The press release highlighted that compared to the first

quarter of 2020, sales increased 17.9% to $145.0 million, with comparable sales growth of 15.7%, while gross profit increased 25.9% to $51.7 million, with gross margins increasing 225 basis points.  Additionally, adjusted EBITDA for the quarter improved by $8.8 million, after recording a $9 million loss in the prior year period.  The press release quoted CEO Egeck stating that Leslie's was "very pleased with the strong start to the year, as evidenced by the increase in our full year outlook," noting that the Company "remains focused on the execution of our growth initiatives for pool season 2021 and delivering on our financial and operational goals."  On these positive results, Leslie's raised its guidance for fiscal 2022, increasing the outlook for sales by $20 million and adjusted EBITDA by $10 million.

24.     During the earnings conference call with analysts later that same day, Egeck highlighted that "[d]espite widespread industry [chlorine] shortages, we are confident in our ability to both serve our existing consumers as well as a significant number of new consumers we are acquiring with our growth strategies."  Later on the call, after stating that Leslie's "will have supply of products that other retailers don't," Egeck emphasized that this benefit:

> allows us to capture a sale, but more importantly, it's allowing us to capture new customers. And with the emphasis we put on consumer file growth, keeping customers with our loyalty program, wrapping our arms around them once we've got them in our system, ***we see this, this industry shortage situation, not just as us getting immediate sale, but us getting a new customer, which is much more durable.***

25.     On May 5, 2021, Leslie's issued a press release announcing its financial results for the second quarter of 2021 ended April 3, 2021.  The results were positive as, compared to the prior year period, sales increased an astounding 52.3% to $192.4 million, with comparable sales growth of 51.3%, and gross profit increased 79.6% to $71.7 million, with gross margins increasing 567 basis points.  Adjusted EBITDA for the quarter was $9.5 million, an improvement of $17.6 million.  With this announcement, the Company substantially raised its guidance for fiscal 2021, increasing its outlook for sales by $75 million and adjusted EBITDA by $25 million.  The press release quoted CEO Egeck stating

that "[b]road-based industry tailwinds combined with our integrated and expanding physical and digital capabilities, as well as strong execution of our growth initiatives were the key drivers of this performance. … As we look to the second half of our fiscal year, our growth initiatives are continuing to gain traction, our teams continue to execute at a high level and we are well prepared for what we believe will be a strong 2021 pool season."

26.     On the accompanying earnings conference call that same day, Egeck explained that the "record sales and profit for the quarter continued to be driven" by "the predictable, recurring and nondiscretionary nature of demand in our industry."  CFO Weddell noted that the Company was increasing its guidance for the remainder of the year due to the "progress against our growth initiatives."  In addition, in response to a question about the "strengthening trends," CFO Weddell explained that the "***core driver of the performance for the quarter was really throughout our product categories, throughout our regions, throughout our businesses, that really drove the beat***."  Weddell also noted that the Company attracted some "first-time consumers" due to the ongoing chlorine shortage, but noted "***the durability of the opportunity for us is really wrapping our arms around those consumers and showing them more than just the supply of chlorine in the current season***."

27.     On August 4, 2021, Leslie's issued a press release announcing its financial results for the third quarter and fiscal year of 2021 ended July 3, 2021.  The press release highlighted that compared to the third quarter of 2020, sales for the quarter increased 24.3% to $596.5 million, with comparable sales growth of 23.9%, while gross profit increased 34.6% to $283.7 million, with gross margins increasing 364 basis points.  Additionally, adjusted EBIDTA increased by 49.7% to $179.3 million compared to the prior year period. On these positive results, Leslie's again raised its guidance for fiscal 2021, increasing the outlook for sales to $1,305 to $1,325 million (up from $1,280 to $1,300 million) and adjusted EBITDA to $260 to $270 million (up from $245 to $255 million).  The press release also quoted CEO Egeck stating, "[t]his financial performance also demonstrates

continued strong execution against our strategic initiatives. As we look ahead, we remain encouraged by consumer demand and the momentum we are seeing across our growth initiatives, both of which position us well for the remainder of the year and beyond."

28.     During the earnings conference call with investors also held on August 4, 2021, Egeck explained that the Company was "encouraged by ***the durable demand we are seeing from our consumers*** and the momentum we have across our growth initiatives." Egeck noted that "new customers this quarter [were] spending 7% more than new customers did last year the same quarter. And our retained customers, basically last year's new customers, [were] buying 14% more this year than last year's retained customers." Egeck clarified the increased purchases were due to an improved "loyalty" initiative because as it "improves engagement, membership grows, total file grows, we get our consumer in a file, and then we're very good about laddering them up."

29.     On December 9, 2021, Leslie's issued a press release announcing its financial results for the fourth quarter and fiscal year of 2021 ended October 2, 2021.  The results were positive again as sales grew 20.7% compared to the prior year to $1,342.9 million, with a comparable sales growth of 21.5%, and gross profit increased 29.2% to $595.2 million, with gross margins increasing 290 basis points.  Adjusted EBITDA also rose an astonishing 48% to $270.6 million for fiscal 2021.  Leslie's also provided guidance for the 2022 fiscal year, with sales expected to be between $1,475 to $1,500 million, gross profit between $655 to $665 million, and adjusted EBITDA between $295 to $305 million.  The press release also announced that the Company's board of directors had authorized a share repurchase program for up to an aggregate amount of $300 million of the Company's outstanding shares of common stock over the next 3 years.

30.     The press release quoted CEO Egeck highlighting the "strongest year in Leslie's history with a record fourth quarter performance as the execution of our strategic growth initiatives drove significant sales growth and cash generation.  These results are a testament to the caliber of our teams and the deep partnerships we have with our vendor

community that enabled us to meet the heightened customer demand we saw throughout the year."

31.     During the earnings conference call with analysts that same day, Egeck stated that "the first point I want to make is that every piece of data that we have tells us that the macro trends driving consumer demand in the pool industry should continue into 2022 and for the next several years . . . All these macro trends support a forecast for ***healthy ongoing consumer demand***."  Egeck also explained he was "encouraged by ***the durable demand we are seeing from our consumers*** the strength of the macro industry trends supporting that demand and the momentum we have across our strategic growth initiatives."  CFO Weddell noted that the Company would "strategically invest in inventory to meet heightened consumer demand."

32.     On February 3, 2022, Leslie's issued a press release announcing its financial results for the first quarter of 2022 ended January 1, 2022.  The press release highlighted that compared to the first quarter of 2021, sales for the quarter increased 27.5% to $184.8 million, with comparable sales growth of 20.5%, while gross profit increased 30.2% to $67.3 million, with gross margins increasing 70 basis points.  Additionally, adjusted EBIDTA improved by $1.3 million to $1.1 million compared to a slight loss in the prior year period.  On these positive results, Leslie's raised its guidance for fiscal 2022, increasing the outlook for sales by $20 million, gross profit by $10 million, and adjusted EBITDA by $5 million.  The Company also noted that it repurchased 7.5 million shares for $152 million under the recent share repurchase program.  CEO Egeck was quoted in the press release, stating that "[c]ontinued industry tailwinds, the competitive advantages derived from our integrated platform of physical and digital assets, and strong execution of our strategic growth initiatives drove record first quarter results. With this strong start, we remain confident in our ability to continue to perform at a high level for the balance of the year."

33.     During the accompanying earnings conference call, Egeck highlighted that Leslie's "continue[s] to see the pool and hot tub industry benefit from strong consumer demand in the quarter[…]" and had "seen no evidence of these macro trends abating." Egeck also emphasized that Leslie's is "benefiting from strong secular macro trends that are driving durable consumer demand and are showing no signs of slowing[,]" and that "great execution by our merchandise team has put us in a favorable and advantaged inventory position." Egeck stressed that although retail price inflation was nearly 12% and ahead of expectations, the Company "didn't see any associated slowdown in demand." In fact, in response to an analyst question regarding inflation, Egeck noted that Leslie's "really [hasn't] seen any drop in demand[,]" explaining that "[i]n fact, 2 of the higher inflation categories, equipment and basic sanitizers showed the strongest growth," supporting the "continuing very durable demand." Egeck highlighted that the strong demand caused Leslie's "consumer file … to show strong sustained growth" of over 11% which was "our ninth straight quarter of double-digit file growth driven by our digital marketing capabilities and compelling assortment."

34.     On May 5, 2022, Leslie's issued a press release announcing its financial results for the second quarter of 2022 ended April 2, 2022. The results were positive again as, compared to the prior year period, sales increased 18.5% to $228.1 million, with comparable sales growth of 13.3%, and gross profit increased 19.5% to $85.6 million, with gross margins increasing 30 basis points. Adjusted EBITDA for the quarter was $8.7 million compared to $9.5 million in the prior year period. With this announcement, the Company substantially raised its guidance again for fiscal 2022, increasing its outlook for sales by $85 million, gross profit by $38 million, and adjusted EBITDA by $18 million. The press released quoted CEO Egeck stating that the "non-discretionary, recurring nature of after-market pool industry demand, our team's strong execution against our strategic growth initiatives, and an advantaged inventory position were all key drivers of our performance."

35.     During the earnings conference call with analysts that same day, Egeck highlighted that this quarter's "performance continued our streak of record results and illustrates our competitive advantages in serving the nondiscretionary annuity-like demand of the aftermarket pool industry."  Regarding inflation, Egeck stated that, in the quarter, the Company "implemented additional pricing actions to maintain product margin rates," emphasizing that "[c]onsumers have accepted the increased retail prices, and we did not see any associated slowdown in demand."  Egeck also repeated his earlier claims that Leslie's saw "strong secular macro trends that are driving durable consumer demand and are showing no signs of slowing" and reminded investors that "more than 80%" of Leslie's sales was "nondiscretionary and benefits from recurring annuity-like demand."  Egeck specifically noted that "in the core businesses of chemicals and equipment and part and repair and maintenance, we have not seen any indication of a decrease in demand."  Egeck later boasted that the quarter "was our tenth straight quarter of strong [consumer file] growth" and that "[w]e are driving this file growth with digital marketing."

36.     During the question-and-answer portion of the call, a William Blair analyst noted that "from a high level, it looks like you['re] [a] COVID winner, your top line has been very strong, stronger than typical history[,]" asking if Leslie's "tried to calculate a potential pull-forward estimate or is this just not your view because of the macro drivers and share gain in price?"  In response, Egeck stated:

> I would say it's not our view, both for the reasons you stated. And also, due to the fact that we track that very carefully. We're able to see by consumer what they purchased prior years versus what they've purchased year-to-date. It's one of the things that we try to pay a lot of attention to. And **we just haven't seen any indication of any meaningful pull-forward**.

37.     On August 5, 2022, Leslie's issued a press release announcing its financial results for the third quarter of 2022 ended July 2, 2022, which were adversely impacted by "execution issues" at the Company's New Jersey distribution center.  The press release highlighted that even with the logistical problems, sales increased 12.9% to $673.6 million,

compared to the prior year period, with a comparable sales increase of 7.4%.  Although gross profit increased 7% to $303.6 million during the quarter, gross margins decreased by 250 basis points, "primarily due to shifts in business mix, decreased product margin and higher distribution expenses[.]"  Additionally, adjusted EBIDTA increased 2% compared to the prior year period to $182.9 million.  The operational setback caused Leslie's to reduce its guidance for fiscal 2022 lowering the sales outlook to $1,550 to $1,570 million (from $1,575 to $1,610 million), the gross profit outlook to $655 to $670 million (from $700 to $715 million), and the adjusted EBIDTA outlook to $287 to $297 million (down from $315 to $330 million).  The press release quoted CEO Egeck assuring investors that the "elevated distribution costs" aimed at improving operations would "continue to fuel our market share gains."

38.     During the earnings conference call later that morning, CEO Egeck again emphasized that "our year-over-year results and market share gains are evidence that the fundamental drivers of the pool industry, the durable competitive advantages of the Leslie's operating model and the effectiveness of our strategic growth initiatives remain intact." Furthermore, Egeck claimed that "[t]he pool and hot tub industry continued to benefit from strong consumer demand in the quarter, and the secular trends driving that demand remain intact."  Egeck also highlighted that "[a]verage revenue per consumer grew 13.7% in the quarter" which "exceeded the impact of inflation, and reflects our growing wallet share." Egeck explained that if not for the operational difficulties, the Company would have "run a 13% comp" to the prior year quarter, showing that "demand, we think, is very much alive." CFO Weddell similarly stated that "demand for our core nondiscretionary product remains solid."

39.     On November 30, 2022, Leslie's issued a press release announcing its financial results for the fourth quarter and fiscal year of 2022 ended October 1, 2022.  The press release highlighted that compared to fiscal 2021, sales for the year had increased 16.3% to $1,562.1 million, with a comparable sales growth of 10.6%, while gross profit

also increased 13.2% to $673.7 million, with a gross margin of 43.1%.  Additionally, adjusted EBITDA increased 8% compared to the prior year period to $292.3 million. Leslie's also offered its first guidance for fiscal 2023 in the press release, projecting the outlook for sales to be between $1,560 to $1,640 million, and gross profit to be between $667 to $708 million, and adjusted EBITDA to be between $280 and $310 million.  The press release quoted CEO Egeck stating that for the year, "execution of our strategic growth initiatives resulted in record sales, gross profit and adjusted EBITDA, as well as market share gains."  Egeck emphasized that the Company "remain[s] focused on delivering against our long-term objectives supported by the recurring non-discretionary demand of the aftermarket pool industry, the competitive advantages of our integrated network of physical and digital assets and the execution of our strategic growth initiatives[.]"

40.     During the Company's Investor/Analyst Day conference call later that day, Egeck touted that Leslie's "Q4 and full year performance reflects the tremendous efforts and contributions of our associates and vendor partners to meet continued strong consumer demand in the face of the discrete operating challenges."  Egeck also highlighted that "[t]hroughout 2022, Leslie's [and] the pool industry benefited from the continuation of strong consumer demand.  This demand was driven by the macro trends that accelerated with the onset of the pandemic and … have created a pool industry that is significantly larger than it was pre-pandemic."  In response to a question about higher chemical prices affecting consumer behaviors, CFO Weddell noted that the Company saw "consumers in some scenarios, or some situations look for smaller sized buckets.… But overall the demand is still there."

41.     On the same call, Weddell similarly stated that "[m]any of the macro trends driving consumer demand in the pool industry remain intact and should continue to drive growth over the next several years."  Weddell also noted that Leslie's was "seeing nice demand" for pool chemicals and did not intend to lower prices for Trichlor.

42.    On February 2, 2023, Leslie's issued a press release announcing its financial results for the first quarter of 2023 ended on December 31, 2022, that was in line with previous guidance "despite significant weather headwinds." The press release highlighted that, compared to the prior year period, first quarter sales increased 5.6% to $195.1 million but noted that the poor weather in the quarter caused a 4% decrease in comparable sales. For gross profit, the press released noted a 3.0% decrease to $65.3 million compared to the prior year period, and gross margin was 33.5%, down 290 basis points year-over-year. Additionally, adjusted EBITDA decreased to an $11.9 million loss, compared to a $1.1 million gain in the same quarter the prior year. Despite these results, the press release quoted CEO Egeck highlighted that "topline growth and continued market share gains are a testament to the durable competitive advantages derived from our integrated system of physical and digital assets as well as our team's strong execution against our diversified growth initiatives." Egeck also stated that for "the remainder of the year and the upcoming 2023 pool season, we believe we are well positioned to deliver on our financial and operational objectives," as Leslie's reaffirmed its guidance for fiscal 2023, keeping the same outlooks that were initiated the prior quarter.

43.    On the accompanying conference call with analysts, Egeck stressed that the slowdown in sales was entirely expected and not indicative of a poor start to the year. In Egeck's words "[g]iven the seasonality of our business, the loss in the quarter was anticipated and does not change our expectations for the full year." Instead, Egeck "remind[ed] everyone that the first quarter is our smallest quarter of the year, representing only about 12% of total year sales." During the question-and-answer portion of the call, Egeck downplayed the quarterly slowdown, stating that "the way to think about demand is to keep in mind, it's a very small quarter, right, for the whole industry. And I know we've said that a lot. But again, trying to extrapolate trends from this first quarter, which is: a, small; and b, had a really outsized weather impact, I just think that's tricky." In fact, Egeck

repeatedly emphasized the "super small quarter, upsized weather impact" as a reason "not to draw any trends for the full year."

44.     On May 3, 2023, Leslie's issued a press release announcing its financial results for the second quarter of 2023 ended on April 1, 2023.  The press release noted that sales for the quarter decreased 6.7% and comparable sales decreased 13.5%, "which included the impact of the normalization of the seasonal purchasing cycle to pre-pandemic patterns and adverse weather." compared to the same period the year prior.  Additionally, compared to last year, gross profit also decreased 16.9%, and gross margins fell 410 basis points to 33.4% for the quarter, while adjusted EBIDTA came in at a $8.4 million loss compared to a $8.7 million gain the prior year.  The press release quoted Egeck stating that results were due to "the industry and Leslie's experienc[ing] comparable sales headwinds related to the normalization of the seasonal purchasing cycle to pre-pandemic patterns, as well as adverse weather in key markets," but that "[u]nderscoring these results was the strong execution of our diversified growth initiatives by our teams which helped to drive continued market share gains and position us well to deliver against our objectives as we head into the all-important pool season."  As such, Leslie's again reaffirmed its guidance for fiscal 2023, keeping its outlook in the same ranges that were first given on November 30, 2022.

45.     During the accompanying earnings conference call, Egeck explained that "[w]ith supply chain issues largely behind us" the Company was merely seeing a "more normalized pre-pandemic revenue contribution breakdown with 25% in the first half of the year and 75% in the second half."  Egeck stressed, however, that "[t]o be clear, we believe this change in seasonal consumer purchasing behavior is a timing shift and not a reduction in underlying demand for the year."  CFO Weddell similarly clarified on the call that "[w]ith product more available across the industry this year, we believe consumers are more closely aligning their purchases with their need for product during the primary pool season," but felt it "important to note that we believe this behavior impacts the timing of

sales, not the absolute dollars expected to be generated this year." Thus, Weddell confirmed that "based on performance for the first half of the year, which is in line with historical seasonal trends prior to the pandemic, we are reaffirming our outlook."

46.     Additionally, Egeck noted that "sales across the pool and hot tub industry were down in the quarter," because, along with "the [] shift to normalized seasonal consumer purchase patterns" and "consumers [being] less confident based on the challenging macroeconomic backdrop," "weather was a significant negative factor year-over-year for key markets."   Despite the lower sales, Egeck claimed that Leslie's "competitive advantages derived from our integrated system of physical and digital assets and our associates' strong execution of our diversified growth initiatives drove nearly 500 basis points of sales outperformance in the quarter[,]" also highlighting that Leslie's was "encouraged that applying a normalized pre-pandemic first half, second half contribution split to our first half results indicates our full year sales and earnings guidance is still appropriate."

47.     Further, during the question-and-answer portion of the conference call, Egeck shared with analysts that in 2021 and 2022:

> [C]onsumers were very concerned about scarcity of product during pool season as were we.  And we, at one point last year in the first quarter, actually sent a letter to our loyalty file, saying we couldn't guarantee product availability in the second half and encouraged them to purchase early prior to the pool season.  And whether on their own or because of that letter, we saw a lot of that.  And that was that 210 to 260 basis points increase in last year's Q2 in terms of the total year's contribution.

48.     The above statements identified in ¶¶23-47 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.   Specifically, Defendants failed to disclose to investors that: (1) the Company's growth was caused by customers over

purchasing products to stockpile in case of a chemical shortage; (2) such sales inflated revenues and earnings and were not indicative of durable and sustainable demand or financial growth; (3) the Company took advantage of chemical shortages by urging customers to stock up on the products because Leslie's could not "guarantee availability" of chemicals in the future; and (4) any slowdown in sales was not a normalization of past seasonality, but was due to the prior excess stockpiling.  As a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Comes to Light**

49.     On July 13, 2023, after the markets closed, Leslie's filed a Current Report on Form 8-K with the SEC, signed by Defendant Weddell, that included a press release announcing the Company's preliminary financial results for the fiscal third quarter of 2023 ended on July 1, 2023.  The earlier-than-anticipated press release revealed disappointing results as Leslie's was now expecting sales in the quarter to be $611 million, down 9% year-over-year, including a comparable sales decline of 12%, while gross profits were now expected fall nearly 18% to a range of $249 to $251 million, with gross margins at 41% after a dropping 410 basis points compared to the prior year period.  Adjusted EBITDA for the quarter was also expected to decline over 30%, falling in the range of $124 to $128 million.  As a result of these declines, the Company also lowered its fiscal 2023 outlook as net sales to a range of $1,430 to $1,450 million (down from $1,560 to $1,640 million), gross profit to a range of $549 to $559 million (down from $667 to $708 million), and adjusted EBITDA to a range of $170 to $180 million (down from $280 to $310 million). Additionally, the press release quoted Egeck stating:

> Our fiscal third quarter results were well below our expectations as low double digit traffic declines in our Residential and Pro businesses drove negative comps across both discretionary and non-discretionary categories. While abnormal weather continued to pressure traffic levels, customer surveys conducted towards the end of the quarter also indicated increased price sensitivity and that **consumers**

*entered the pool season with a greater than normal amount of chemicals left[ ]over from last year*.

50.    The press release also contained an announcement of a CFO transition, as Weddell was stepping down as CFO effective August 7, 2023, and being replaced by Scott Bowman, with Weddell remaining as an advisor to the Company until December 31, 2023.

51.    Analysts were "negatively surprised by everything" in the Company's "shocking" pre-announcement of its third quarter results.  For example, analysts at William Blair downgraded its rating of Leslie's noting the "Shocking Prerelease [was] Well Below Street."  William Blair warned there was a "the lack of visibility into improving sales," and that the "pull-forward of chemical needs due to shortages last year" was one of "the big issues."  Similarly, analysts at Loop Capital Markets downgraded their rating for Leslie's, explaining that "pretty much everything in the company's preliminary earnings release was more negative than we could have anticipated," and cautioned that "management's credibility will need to be restored."  Analysts at Jefferies also downgraded Leslie's stock until "1) visibility into the unwind of chemical carryover from '23 is clear, and 2) comfort is established w/ the incoming CFO following a 60% guidance cut."  Jefferies explained that the "image" of Leslie's purported "loyal customers . . . is blurred now by prior-year stock-up activity" with "implications" that "[g]o-forward demand will look worse than previously expected due to lower transactions."

52.    On these revelations, the price of Leslie's stock dropped $2.82 per share, or more than 29%, from a closing price of $9.52 per share on the prior trading day of July 13, 2023, down to a closing price of $6.70 per share on July 14, 2023.  Leslie's stock price continued to fall another $1.24 per share the following trading day, or over 18%, closing at $5.46 per share on July 17, 2023.

**Post-Class Period Events**

53.    On August 2, 2023, Leslie's issued a press release announcing its financial results for the third quarter of 2023 ended July 1, 2023.  The Company reported the same results given in its preliminary release and hosted an earnings conference call with

19

investors to provide further color on the factors impacting its financial results. For example, one of the factors CEO Egeck explained was that "that a portion of our customers had a greater-than-normal amount of chemicals left over from last year . . . validated by 2 separate consumer surveys," stating that this "consumer behavior is not something we have seen before." Egeck also noted another issue was "increased consumer price sensitivity [because] [a]fter 3 years of significant price inflation, consumers were not willing to absorb price increases during the quarter."

54.    Egeck later stated that "the lack of [loyalty] file growth, . . . has a lot to do with the 2 surveys that we ran, which showed a larger-than-normal amount of product left over in the industry in the consumers' hands. We've turned to calling it the garage and shed inventory internally." Egeck further explained:

> We've got some feedback from our stores. They were hearing that from customers as they were coming in, particularly with regards to our water tests. Even in a down quarter, we ran more water tests than the prior year's period, but the conversion of those tests was lower. And what we were hearing from the stores when we questioned it was that they were hearing that people had – already had those chemicals. So it's a highly unusual situation when we think of what the duration might be.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Leslie's common stock between February 5, 2021 and July 13, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

56.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there

are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, common stock of Leslie's actively traded on the Nasdaq (an open and efficient market) under the ticker symbol "LESL."  Millions of Leslie's shares were traded publicly during the Class Period on the Nasdaq.  As of July 28, 2023, Leslie's had more than 184 million shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Leslie's or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b.    whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c.    whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Leslie's;

d.    whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Leslie's;

e.      whether the market price of Leslie's common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

61.    The market for Leslie's common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, the Company's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased and/or acquired the Company's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Leslie's and have been damaged thereby.

62.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of the Company's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about the Company's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive

assessment of the Company and its business, thus causing the Company's ordinary shares and common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased and/or acquired the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

63. As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

64. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Leslie's, their control over, receipt, and/or modification of the Company's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Leslie's, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

65. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary

statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

66. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Leslie's who knew that the statement was false when made.

## LOSS CAUSATION

67. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

68. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This artificially inflated the prices of the Company's common stock and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of the Company's stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

69. The market for Leslie's common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Leslie's common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased and/or acquired the Company's ordinary shares and/or common stock relying upon the integrity of the market price of

Leslie's common stock and market information relating to Leslie's and have been damaged thereby.

70.     At all times relevant, the market for Leslie's common stock was an efficient market for the following reasons, among others:

        a.     Leslie's was listed and actively traded on Nasdaq, a highly efficient and automated market;

        b.     As a regulated issuer, Leslie's filed periodic public reports with the SEC and/or the Nasdaq;

        c.     Leslie's regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

        d.     Leslie's was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

71.     As a result of the foregoing, the market for Leslie's common stock promptly digested current information regarding Leslie's from all publicly available sources and reflected such information in the Company's stock price.  Under these circumstances, all purchasers and acquirers of Leslie's ordinary shares and common stock during the Class Period suffered similar injury through their purchase and/or acquisition of stock at artificially inflated prices, and a presumption of reliance applies.

72.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to

disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

73.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.   During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Leslie's ordinary shares and common stock; and (iii) cause Plaintiff and other members of the Class to purchase and/or acquire Leslie's ordinary shares and common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

75.   Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers and acquirers of the Company's securities in an effort to maintain artificially high market prices for Leslie's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5

promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

76. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's business, operations, and prospects, as specified herein. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Leslie's and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's ordinary shares and common stock during the Class Period.

77. Each of the Individual Defendants' primary liability and controlling-person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware

of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

78.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its ordinary shares and common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Leslie's common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the shares and stock traded or trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased and/or acquired Leslie's common stock during the Class Period at artificially inflated prices and were damaged thereby.

80.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff, the other members of the Class, and the marketplace known of the truth regarding the problems that Leslie's  was experiencing, which were not disclosed by Defendants,

Plaintiff and other members of the Class would not have purchased or acquired Leslie's common stock, or, if they had purchased or acquired such shares or stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

81.   By virtue of the foregoing, Leslie's and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases and acquisitions of the Company's common stock during the Class Period.

## COUNT II
### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

83.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

84.   The Individual Defendants acted as controlling persons of Leslie's within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.   In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to

control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.     As set forth above, Leslie's and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases and acquisitions of the Company's ordinary shares and/or common stock during the Class Period.

## **PRAYER FOR RELIEF**

87.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other relief as this Court deems appropriate.

## **JURY DEMAND**

88.     Plaintiff demands a trial by jury.

Dated: September 8, 2023                          Respectfully submitted,

                                                  **KELLER ROHRBACK L.L.P.**


                                                  */s/ Gary A. Gotto*
                                                  Gary A. Gotto, No. 007401
                                                  3101 North Central Avenue, Suite 1400

1   Phoenix, Arizona 85012
Telephone: (602) 248-0088
2   Facsimile: (602) 248-2822
ggotto@kellerrohrback.com
3

4   *Local Counsel for Plaintiff West Palm
   Beach Police Pension Fund*
5

6   **SAXENA WHITE P.A.**
Lester R. Hooker (*pro hac vice*
7   *forthcoming*)
7777 Glades Road, Suite 300
8   Boca Raton, Florida 33434
Telephone: (561) 394-3399
9   Facsimile: (561) 394-3382
lhooker@saxenawhite.com
10

11   *-and-*

12
Marco A. Dueñas (*pro hac vice*
13   *forthcoming*)
10 Bank Street, Suite 882
14   White Plains, New York 10606
Telephone: (914) 437-8551
15   Facsimile: (888) 631-3611
mduenas@saxenawhite.com
16

17   *Counsel for Plaintiff West Palm Beach
   Police Pension Fund*
18

19

20

21

22

23

24

25

26

27

28

---

31

## CERTIFICATION AND AUTHORIZATION

I, Jonathan Frost, on behalf of West Palm Beach Police Pension Fund ("WPB Police"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed a complaint prepared against Leslie's, Inc. ("Leslie's") alleging violations of the federal securities laws, and authorized its filing. I am authorized in my capacity as Chairman of WPB Police to execute this Certification on behalf of WPB Police. WPB Police has authorized Saxena White P.A. to file a motion for lead plaintiff appointment in this action or any related action.

2.  WPB Police did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3.  WPB Police is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  WPB Police's transactions in Leslie's common stock during the Class Period are set forth in the attached Schedule A.

5.  WPB Police has sought to serve and was appointed as lead plaintiff and/or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *In re SelectQuote, Inc. Sec. Litig.*, No. 1:21-cv-06903 (S.D.N.Y.)

6.  WPB Police has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff, was not appointed lead plaintiff, or the lead plaintiff decision is still pending: *None*

7.  WPB Police will not accept any payment for serving as a representative party on behalf of the Class beyond WPB Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 08 day of September, 2023.

West Palm Beach Police Pension Fund

Jonathan Frost, Chairman

**SCHEDULE A**
**West Palm Beach Police Pension Fund**
**Transactions in Leslie's, Inc.**

| Common Stock Purchases | | | Common Stock Sales | | |
|---|---|---|---|---|---|
| Date | Shares | Price | Date | Shares | Price |
| 03/09/21 | 155 | $22.9802 | | | |
| 03/10/21 | 180 | $24.0031 | | | |
| 03/10/21 | 15 | $23.9950 | | | |
| 03/11/21 | 355 | $24.3732 | | | |
| 03/11/21 | 20 | $24.6100 | | | |
| 03/12/21 | 610 | $23.5529 | | | |
| 03/12/21 | 380 | $23.7929 | | | |
| 03/15/21 | 400 | $23.5388 | | | |
| 03/16/21 | 325 | $23.1643 | | | |
| 03/17/21 | 335 | $22.8953 | | | |
| 03/18/21 | 280 | $23.0092 | | | |
| 03/19/21 | 460 | $23.4861 | | | |
| 03/22/21 | 450 | $23.6943 | | | |
| 03/23/21 | 715 | $24.1720 | | | |
| 03/24/21 | 290 | $23.2022 | | | |
| 03/25/21 | 355 | $22.5791 | | | |
| 03/26/21 | 80 | $21.8844 | | | |
| 03/26/21 | 135 | $22.6000 | | | |
| 03/30/21 | 55 | $23.2260 | | | |
| 03/30/21 | 65 | $23.5497 | | | |
| 06/10/21 | 4,680 | $27.6400 | | | |
| 06/10/21 | 380 | $27.4538 | | | |
| 07/19/21 | 630 | $24.3500 | | | |
| 07/21/21 | 255 | $26.0077 | | | |
| 07/21/21 | 130 | $26.0245 | | | |
| 07/22/21 | 200 | $25.1118 | | | |
| 07/22/21 | 65 | $25.5400 | | | |
| 08/05/21 | 670 | $22.8922 | | | |
| 08/06/21 | 335 | $23.0116 | | | |
| 08/09/21 | 215 | $24.2050 | | | |
| 08/10/21 | 85 | $24.5618 | | | |
| 08/16/21 | 5 | $23.9389 | | | |
| 08/17/21 | 470 | $23.1662 | | | |
| 08/17/21 | 90 | $22.8182 | | | |
| 09/15/21 | 3,060 | $22.0000 | | | |

| 09/15/21 | 20 | $21.9969 |
| 09/17/21 | 120 | $23.3467 |
| 09/30/21 | 470 | $20.4300 |
| 10/01/21 | 50 | $20.4150 |
| 10/01/21 | 175 | $20.0513 |
| 10/04/21 | 245 | $20.1552 |
| 11/16/21 | 205 | $22.1178 |
| 11/17/21 | 195 | $21.9318 |
| 11/18/21 | 135 | $21.3206 |
| 11/19/21 | 70 | $20.7250 |
| 11/19/21 | 360 | $20.8533 |
| 11/22/21 | 135 | $21.0593 |
| 11/23/21 | 360 | $20.7127 |
| 11/30/21 | 375 | $20.6944 |
| 11/30/21 | 20 | $20.4769 |
| 12/01/21 | 830 | $20.9319 |
| 12/02/21 | 65 | $20.4500 |
| 12/02/21 | 200 | $20.6017 |
| 12/02/21 | 30 | $20.5835 |
| 12/14/21 | 1,480 | $20.5000 |
| 05/12/22 | 25 | $17.3400 |
| 05/12/22 | 140 | $17.4741 |
| 07/27/22 | 75 | $15.3190 |
| 07/28/22 | 30 | $15.1329 |
| 07/28/22 | 185 | $15.1904 |