Patricia Lee Refo (#017032)
Megan Carrasco (#037109)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: prefo@swlaw.com
          mcarrasco@swlaw.com

GIBSON, DUNN & CRUTCHER LLP
Monica K. Loseman *(pro hac vice)*
  mloseman@gibsondunn.com
Allison K. Kostecka *(pro hac vice)*
  akostecka@gibsondunn.com
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: (303) 298-5700
Facsimile: (303) 298-5907

*Counsel for Defendants*

*[Additional Counsel listed on Signature Page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Treasurer of the State of North Carolina, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>vs.<br><br>Leslie's, Inc., Michael R. Egeck, and Steven M. Weddell,<br><br>     Defendants. | Case No. 2:23-cv-01887-PHX-SMB<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>(Assigned to the Honorable Susan M. Brnovich) |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   STATEMENT OF ALLEGED FACTS .................................................. 3

III.  LEGAL FRAMEWORK ......................................................................... 6

IV.  ARGUMENT ........................................................................................... 6

    A.    Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5 ............... 6

        1.   The Complaint Fails to Plead an Actionable Misstatement or Omission ................................................................................. 7

            a.   Plaintiffs' blanket allegations of falsity are insufficient............. 7

            b.   Plaintiffs lack particularized facts showing the challenged statements were false or misleading when made........................ 9

            c.   Statements of opinion are not actionable................................. 12

            d.   Statements of corporate optimism are not actionable............... 13

            e.   The challenged forward-looking statements are not actionable. .................................................................................. 13

        2.   The Complaint Does Not Plead Any Inference of Scienter.................. 14

            a.   Plaintiffs do not allege any plausible motive........................... 15

            b.   Plaintiffs' "former employee" allegations do not show scienter. ................................................................................... 16

            c.   Plaintiffs' core operations allegations do not establish scienter. ................................................................................... 18

            d.   Defendants' own statements do not establish scienter. ............. 20

            e.   The Sarbanes Oxley certifications do not establish scienter. .... 21

            f.   The competing, non-fraudulent inference is far more compelling. .............................................................................. 21

        3.   The Complaint Fails to Plead Loss Causation ..................................... 21

    B.    Plaintiffs Fail to State a Claim Under Section 20(a) ....................................... 23

V.    CONCLUSION ....................................................................................... 24

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alich v. Opendoor Techs. Inc.*,
  2024 WL 839146 (D. Ariz. Feb. 28, 2024) ........................................................... 19, 20, 23

*In re Apollo Grp., Inc. Sec. Litig.*,
  2011 WL 5101787 (D. Ariz. Oct. 27. 2011) .................................................................. 17

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ...................................................................................... 16

*Applestein v. Medivation, Inc.*,
  861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir.
  2014) ............................................................................................................................. 16

*Arkansas Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*,
  77 F.4th 74 (2d Cir. 2023) ............................................................................................ 23

*Bajjuri v. Raytheon Techs. Corp.*,
  2023 WL 3650554 (D. Ariz. May 25, 2023) ................................................................. 18

*Bajjuri v. Raytheon Techs. Corp.*,
  641 F. Supp. 3d 735 (D. Ariz. 2022) ......................................................................... 3, 21

*Bien v. LifeLock Inc.*,
  2015 WL 12819154 (D. Ariz. July 21, 2015) ................................................................ 12

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ................................................................................... 22, 23

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ........................................................................................ 10

*Browning v. Amyris, Inc.*,
  2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) .............................................................. 16

*City of Pontiac Gen. Employees Ret. Sys. v. First Solar Inc.*,
  2023 WL 155861 (D. Ariz. Jan. 11, 2023) ......................................................... 16, 21, 23

*Cupat v. Palantir Tech., Inc.*,
  2023 WL 2585298 (D. Colo. Mar. 31, 2024) ................................................................ 22

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ...................................................................................... 17

Gibson, Dunn &
Crutcher LLP

*In re Federated Dep't Stores, Inc., Sec. Litig.*,
   2004 WL 444559 (S.D.N.Y. Mar. 11, 2004)................................................................. 21

*Gebhart v. SEC*,
   595 F.3d 1034 (9th Cir. 2017) .................................................................................... 15

*Hutton v. McDaniel*,
   264 F. Supp. 3d 996 (D. Ariz. 2017) ........................................................................... 5

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
   998 F.3d 397 (9th Cir. 2021) ...................................................................................... 22

*Jackson v. Microchip Tech. Inc.*,
   2020 WL 1170843 (D. Ariz. Mar. 11, 2020)............................................................... 13

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .................................................................................. 3, 5

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) .............................................................................. 19, 20

*Lomingkit v. Apollo Educ. Group Inc.*,
   275 F. Supp. 3d 1139 (D. Ariz. 2017) ..................................................................... 8, 17

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ........................................................................................ 6

*Lowthorp v. Mesa Air Group Inc.*,
   2021 WL 3089118 (D. Ariz. July 22, 2021)................................................................... 3

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x. 62 (2d Cir. 2015) .................. 10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   --- S.Ct. --- (2024).......................................................................................................... 7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .............................................................................. 7, 16

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...................................................................................... 15

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
   730 F.3d 1111 (9th Cir. 2013) .................................................................................... 22

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) .............................................................................. 23, 24

Gibson, Dunn &
Crutcher LLP

iii

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ............................................................................................ 12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598, 606 (9th Cir. 2014) ................................................................. 13, 22

*Palm Harbor Pension Plan v. First Solar Inc.*,
  2023 WL 4161355 (D. Ariz. June 23, 2023) ........................................................ 6

*Pardi v. Tricida, Inc.*,
  2022 WL 3018144 (N.D. Cal. July 29, 2022) ....................................................... 5

*In re PetSmart, Inc. Sec. Litig.*,
  61 F. Supp. 2d 982 (D. Ariz. 1999) ...................................................................... 6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................... 14, 15, 18, 19, 20

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ............................................................................ 15

*Reidinger v. Zendesk*,
  2021 WL 796261 (N.D. Cal. Mar. 2, 2021) ........................................................ 21

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard
  Co.*,
  845 F.3d 1268 (9th Cir. 2017) ............................................................................ 13

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) .......................................................................... 6, 16

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .............................................................................. 21

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ........................................................................ 15, 19

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ................................................................................ 6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) .............................................................. 16

*In re Splunk Inc. Sec. Litig.*,
  592 F. Supp. 3d 919 (N.D. Cal. 2022) ................................................................ 13

Gibson, Dunn &
Crutcher LLP

*Teamsters Loc. 617 v. Apollo Grp., Inc.*,
    2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ........................................................... 7, 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ........................................................................................................ 15

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .................................................................................. 12, 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .......................................................................... 6, 17, 21

**Statutes**

15 U.S.C. § 78u-4(b) ....................................................................................................... 6

15 U.S.C. § 78u-4 *et seq.* ............................................................................................... 1

15 U.S.C. § 78u-5(i)(1)(A)–(D) ...................................................................................... 13

15 U.S.C. § 78u-5(c)(1)–(2) ........................................................................................... 13

**Rules**

Fed. R. Evid. 201(b)(1)–(2) ............................................................................................ 3

Gibson, Dunn &
Crutcher LLP

v

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT

This Complaint is nothing more than a typical, reflexive filing made in the wake of a stock price decline. On July 13, 2023, Leslie's, a provider of products and services essential to the care of residential and commercial pools and spas, announced preliminary financial results for the third quarter for 2023, adjusting its outlook for the fiscal year to account for lower sales, profits, and margins. As the company explained at the time, recent customer surveys revealed that consumers had stockpiled products in 2022, explaining lower-than-expected consumer demand in fiscal year 2023. Unsurprisingly, the company's stock price dropped based on those disappointing financial results. And, in what has become almost routine for public companies in the wake of a stock price drop, this action followed.

The Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, was passed to eliminate frivolous suits filed whenever a company's stock price drops. The PSLRA contains heightened pleading standards designed to permit genuine claims of fraud to go forward while screening out meritless lawsuits filed in reaction to poor business results— as is the case here. Through this litigation, Plaintiffs try to transform well-reasoned business predictions and strategies into securities fraud, claiming Defendants *must have known* that the inventory they were working to acquire would not be sold as they had expected. But Plaintiffs do not point to a single fact indicating that Defendants knew, but intentionally withheld, information about inventory levels or expected demand. Plaintiffs' claim is simply not plausible, and it fails for at least three reasons.

*First,* Plaintiffs must plead falsity with particularity, meaning they must specify each alleged misstatement *and* allege facts demonstrating that each misstatement was false or misleading when made. Far from meeting this heightened standard, Plaintiffs make little effort to specify the statements they challenge and make no effort at all to plead facts suggesting those statements were false or misleading when made. The Complaint quotes large blocks of text, appearing to challenge 32 public statements, and arguing each statement was misleading based on the same general and conclusory allegations of falsity. There are no allegations in the

Gibson, Dunn &
Crutcher LLP

Complaint—much less well-pleaded facts—that show any challenged statement was inaccurate at the time it was made. The crux of the Complaint challenges Defendants' predictions about future demand and opinions or optimism regarding the appropriate level of inventory. Plaintiffs' hindsight disagreement with Defendants' judgment cannot form the basis for securities fraud.

*Second,* Plaintiffs must plead that each Defendant had an intent to deceive that is cogent and compelling. The Complaint falls far short of meeting this exacting standard. Plaintiffs do not allege that any Defendant had a motive or financial incentive to lie to investors or that they had access to internal information that contradicted their public statements. Instead, the Complaint cobbles together a theory of scienter based on pre-class period stock sales, vague accounts from former employees with no connection to Defendants, Leslie's "core operations," and Sarbanes-Oxley certifications. These allegations do not come close to raising a strong inference of fraudulent intent. Here, the non-fraudulent inference is far more compelling: Facing both increased demand and supply chain uncertainties, Leslie's pursued a strategy to increase inventory levels, but then demand faltered due to unforeseen circumstances. That is not fraud.

*Third*, Plaintiffs must allege loss causation, meaning that the decline in Leslie's stock price was caused by the revelation of a "truth" about the alleged misstatements. Plaintiffs must allege a plausible connection between the alleged misstatements and the later disclosure, such that the later disclosure could cause a company's stock price to drop. The Complaint fails here too. The alleged corrective disclosure reveals nothing "new" that had previously been concealed about the company, and there is a "mismatch" between the alleged corrective disclosure, which concerns Leslie's financial results, and the challenged statements, which relate to inventory levels and consumer demand.

The Complaint should be dismissed with prejudice.

Gibson, Dunn &
Crutcher LLP

1

## II.    STATEMENT OF ALLEGED FACTS[1]

Leslie's is the world's largest retailer of pool and spa products and services, serving residential, commercial, and professional customers. ¶20.[2] Most of Leslie's products are necessary items for pool and spa owners, including chlorine-based products required for proper maintenance of pools and spas. *Id.* Leslie's sells its products through more than 1,000 retail locations across the United States and on e-commerce websites. Ex. 9 at 17.[3] Leslie's business is highly seasonal, with 75% of its sales occurring in the peak pool season (April through September), which spans Leslie's third and fourth fiscal quarters.[4] Ex. 5 at 40.[5]

The COVID-19 pandemic increased the demand for at-home activities and resulted in a dramatic increase in both pool and spa installations and the forecast for future installations, as well as increased use of existing pools and spas as people were spending more time recreating at home. ¶¶21, 22; Ex. 4 at 4. The growing number of pools and spas and the increased use of

---

[1] This Motion describes the facts as alleged in the Complaint, as required by the Federal Rules. Defendants do not concede that the factual allegations are true.

[2] All references to paragraph numbers refer to the corresponding paragraph numbers in Plaintiffs' Complaint.

[3] The Court should take judicial notice or incorporate by reference Leslie's earnings and investor call transcripts, attached as Exs. 1, 2, 3, 4, 6, 7, and 9. Plaintiffs challenge statements made on each of these earnings calls, and the transcripts therefore "form[] the basis" of securities fraud allegations and their full context should be considered when assessing Plaintiffs' allegations. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). These Exhibits are also subject to judicial notice because they are publicly available documents not subject to reasonable dispute. *See Lowthorp v. Mesa Air Group Inc.*, 2021 WL 3089118, at *5 (D. Ariz. July 22, 2021) (taking judicial notice of investor call transcript).

[4] Leslie's first quarter spans October–December, second quarter January–March, third quarter April–June, and fourth quarter July–September. *See* ¶33 n.3.

[5] Exhibits 5, 10, and 11, which are Leslie's SEC filings, are incorporated by reference into the Complaint because they "form[] the basis" of Plaintiffs' securities fraud allegations, and their full context should be considered when assessing Plaintiffs' allegations. *Khoja*, 899 F.3d at 998. They are also subject to judicial notice because they are publicly available and not subject to reasonable dispute. Fed. R. Evid. 201(b)(1)–(2); s*ee also Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 745 (D. Ariz. 2022). Exhibit 5 only includes an excerpt of Leslie's 2022 Form 10-K.

pools and spas resulted in higher demand for Leslie's chlorine-based maintenance products. ¶¶21, 23. At the same time demand was surging, the industry was facing significant supply constraints. An August 2020 hurricane and fire shutdown the nation's second-largest manufacturer of dry chlorine products, destroying 40% of the domestic supply of chlorine tablets. ¶25. The pandemic caused further supply uncertainties as the ability to import chlorine-based products was stymied by labor and global supply chain issues. *Id.* The tightened supply caused the market price for chlorine-based products to increase, causing the corresponding costs for securing and carrying inventory to increase as well. ¶¶25, 29; Ex. 1 at 13. Faced with these conditions, Leslie's disclosed its strategy to significantly increase inventory, both to meet growing demand and to mitigate the impact of ongoing supply uncertainties. *See e.g.*, Ex. 4 at 17. Throughout the alleged class period, Leslie's reiterated that its elevated inventory position aligned with its top priority: building consumer trust by meeting any demand and keeping products in-stock. *Id.*

Leslie's long-standing relationships with suppliers provided it with access to chlorine-based chemicals. ¶26. Even with this access, Leslie's struggled to consistently meet consumer demand, and it experienced "out of stocks on key products" in 2020 and 2021. Ex. 6 at 10.  In light of customer concern about "scarcity of pool product during pool season," Leslie's reached out to customers in its Loyalty Program before peak pool season in 2022 to explain it "couldn't guarantee product availability in the second half" of the year, and "encouraged [customers] to purchase early prior to the pool season." ¶4; Ex. 7 at 17.

Because Leslie's was able to access chlorine-based chemicals when other retailers could not, demand for Leslie's products continued to grow. Leslie's wanted to meet this growing demand and retain the new customers by providing a consistent supply of products. *See, e.g.*, Ex. 4 at 4. Leslie's told investors that its number one priority was to "put the company in a position to meet consumer demand." Ex. 4 at 6. To achieve this goal, Leslie's obtained and carried elevated levels of inventory, and pushed that inventory to distribution centers and retail outlets so it would be on hand when demand peaked during pool season. *See, e.g., id.* ("We view our current elevated inventory position as appropriate given the uncertainty of supply

going into fiscal 2023."); Ex. 1 at 13 ("I think in the current environment more inventory is better."). Leslie's had suffered a setback when "out of stocks" in the Northeast resulted in approximately $35 million in lost sales during the third quarter of 2022. Ex. 3 at 3–4, 19.  As a result, Leslie's decided to "take inventory at a little bit higher level . . . going into the end of [2022] and to start off [2023] in a better position." *Id* at 18. Leslie's consistently reported its growing inventory levels and told investors that it would not pursue opportunities to reduce inventories until "industry supply chains become more predictable" and Leslie's "can adequately meet consumer demand." Ex. 4 at 6.

On July 13, 2023, Leslie's announced preliminary financial results for the third quarter of 2023. Leslie's disclosed that its performance was "below our expectations" and revised its outlook for 2023. Ex. 8.[6] The Company attributed the lower-than-expected sales to persistent abnormal weather, consumer price sensitivity, and "consumers enter[ing] the pool season with a greater than normal amount of chemicals leftover." ¶79; *see also* Ex. 8 (noting that surveys conducted in June 2023 revealed customer stockpiling). As Michael Egeck, Leslie's CEO, explained on the August 2, 2023 earnings call, abnormal sales at the start of the peak pool season motivated Leslie's to conduct consumer surveys, and Leslie's was surprised when the surveys revealed stockpiling as that "consumer behavior" was "not something [Defendants had] seen before." Ex. 9 at 4. Leslie's stock price dropped on July 14, 2023, and this lawsuit was filed shortly thereafter.[7]

---

[6] The Court should take judicial notice or incorporate by reference Leslie's press release, attached as Ex. 8. The press release contains statements challenged in the Complaint and the alleged corrective disclosure, so it forms the basis for Plaintiffs' claims. *Khoja*, 899 F.3d at 1002; *see also Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1007 (D. Ariz. 2017) (incorporating company press release). Judicial notice of the press release is also appropriate, as "[c]ourts in the Ninth Circuit routinely take judicial notice of press releases." *Pardi v. Tricida, Inc.*, 2022 WL 3018144, at *4 (N.D. Cal. July 29, 2022) (internal citation omitted).

[7] On December 1, 2023, the Court appointed the North Carolina Retirement System as Lead Plaintiff. Dkt. 24. The Complaint adds a new plaintiff (Macomb County Retirement System) without leave of the Court, without explanation.

### III.    LEGAL FRAMEWORK

Congress enacted the PSLRA to prevent plaintiffs from filing spurious lawsuits whenever a public company's stock price drops "without regard to any underlying culpability" of the public company. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 978 (9th Cir. 1999); *see also In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 1001 (D. Ariz. 1999) ("[I]t is necessary to meet the pleading burdens imposed by Congress to deter fishing expeditions by disappointed investors."). Plaintiffs alleging securities fraud must satisfy Federal Rule of Civil Procedure 9(b) and requirements under the PSLRA. *Palm Harbor Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *2 (D. Ariz. June 23, 2023).

Rule 9(b) and the PSLRA require particularized allegations of fraud, including allegations that identify the misstatement, set forth what is false or misleading, and specify why the statement was false or misleading when made. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *First Solar Inc.*, 2023 WL 4161355, at *2 (D. Ariz. June 23, 2023). A complaint alleging securities fraud must also "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind" for each allegedly false or misleading statement. 15 U.S.C. § 78u-4(b). If a complaint does not satisfy these "exacting pleading requirements," the court "must" dismiss the complaint. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

### IV.    ARGUMENT

#### A.    Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5

To state a Section 10(b) claim, the Complaint must allege facts sufficient to show (1) a material misrepresentation or omission ("falsity"); (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) on which Plaintiffs relied; (5) economic loss; and (6) loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880, 886–87 (9th Cir. 2014). The failure to adequately allege any one of these elements is fatal at the pleading stage—Plaintiffs fail to adequately allege at least three elements.

Gibson, Dunn &
Crutcher LLP

6

1

2

**1.    The Complaint Fails to Plead an Actionable Misstatement or Omission**

**a. Plaintiffs' blanket allegations of falsity are insufficient.**

3

4

5

6

7

8

9

10

11

Plaintiffs challenge 32 statements made during the Class Period. *See* Appendix A. Yet, in a single paragraph after their list of alleged misstatements, Plaintiffs offer conclusory allegations of falsity in the form of four allegedly omitted facts.[8] These allegations make it impossible to discern why each challenged statement was false or misleading when made and fall far short of the PSLRA's "exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). Simply pointing to "[a] litany of alleged false statements, unaccompanied by . . . specific facts indicating why those statements were false, does not meet this standard." *Id.*; *Teamsters Loc. 617 v. Apollo Grp., Inc.*, 2011 WL 1253250, at *29 (D. Ariz. Mar. 31, 2011) (same).

12

13

14

15

16

17

18

19

Plaintiffs' first allegedly omitted fact—that Leslie's failed to disclose that its inventory exceeded the volumes needed to satisfy "predicted" consumer demand, ¶77(a)—is entirely unsupported by factual allegations in the Complaint. The Complaint does not allege, let alone allege with particularity, that any Defendants knew that Leslie's inventory had grown to a level where it outpaced expected consumer demand. In fact, Leslie's disclosures make clear that slowing consumer demand, which was first alleged to be revealed through consumer surveys performed at the end of Leslie's third quarter of fiscal 2023, was a surprise to Defendants. Ex. 8.

20

21

22

23

24

Plaintiffs' second allegedly omitted fact fares no better. Plaintiffs allege that the challenged statements were false or misleading because its distribution centers and stores had excess products and because Leslie's hired third-party companies to store inventory. ¶77(b). But Leslie's specifically disclosed to investors that it was building up inventory and sending it

25

26

27

28

---

[8] To the extent Plaintiffs' allegations are premised solely on the idea that Leslie's failed to disclose certain facts, the Supreme Court recently clarified that "[p]ure omissions are not actionable under Rule 10b-5(b)." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, No. 22–1165, slip op. at 1, 601 U. S. ____ (Apr. 12, 2024).

to its stores. *E.g.*, ¶¶47; Ex. 4 at 17 ("We have the ability to use our balance [sheet] as a competitive advantage and we will continue to carry higher inventory levels in both our stores and our distribution centers. We will also focus on the earlier receipt of goods so we can use our distribution capabilities to position inventory across our network in advance of season."). And the fact that Leslie's hired third-party companies to assist with its inventory does not suggest that any of Defendants' statements were false or misleading when made.

Plaintiffs' third allegedly omitted fact—Leslie's encouraged its loyalty customers to "stock up" on chlorine-based products—does not demonstrate that any challenged statement was false when made. Plaintiffs claim that Defendants intended to "offload" excess inventory by encouraging customers to stock up on products at the expense of future sales. ¶34. But the Complaint lacks factual allegations demonstrating that Defendants encouraged customers to stock up on product *due to* excess inventory, or allegations that Defendants *knew* increasing inventory would decrease gross margins in the future. The fact that Leslie's encouraged loyal customers to purchase products ahead of peak season in a seasonal business and to avoid "out of stock" situations is consistent with Defendants' repeated refrain about supply uncertainties and their desire to avoid a situation where customers could not get the products they need during pool season.

Plaintiffs' fourth allegedly omitted fact is nothing but fraud-by-hindsight. Plaintiffs allege that Leslie's excess inventory "drove down gross margin" and resulted in "larger than expected inventory adjustments." ¶77(d). But allegations regarding a corrective disclosure and post-class period events do not plausibly show that any challenged statement was false or misleading *when made*. The Complaint does not allege facts indicating that Defendants *knew* in 2022 that they would have to adjust inventory in 2023. "[T]he Court must look at the context existing at the time the statements were made to determine whether a statement is actionable—not Plaintiff's post-hoc analysis." *Lomingkit v. Apollo Educ. Group Inc.*, 275 F. Supp. 3d 1139, 1160 (D. Ariz. 2017).

Demonstrating the futility of blanket allegations of falsity, Plaintiffs challenge a statement on the earnings call for the second quarter of fiscal 2022 that Leslie's would "enter

Gibson, Dunn &
Crutcher LLP

pool season *ready to meet the needs of our customers*." ¶45. Not one of the allegedly omitted "material adverse facts" renders this statement false or misleading. Even if Defendants knew at the time of the call that "Leslie's inventory of chlorine-based products exceeded the volumes necessary to satisfy predicted demand," this statement about being able to meet customer needs would not be false. ¶77(a). Nor would the failure to disclose that retail stores had too much inventory or that Leslie's encouraged customers to purchase products early in the season render this statement false. Plaintiffs' "blanket assertion[s] of falsity . . . do[] not meet the PSLRA's 'exacting requirements,'" *Teamsters Loc. 617*, 2011 WL 1253250, at *29, and the Complaint should be dismissed on this basis alone.

   **b. Plaintiffs lack particularized facts showing the challenged statements were false or misleading when made.**

   The statements challenged in the Complaint generally fall into four categories: statements regarding inventory, demand, the company's strategic position, and inventory risk disclosures. As discussed above, Plaintiffs do little to allege that any of the challenged statements were false when made. The cursory allegations Plaintiffs do make fail for multiple reasons.

   ***Inventory Statements.*** Plaintiffs' core falsity theory is that Leslie's failed to disclose that its inventory had "ballooned," ¶77, and many of the challenged statements concern Leslie's inventory levels.[9] Those same statements, however, disclose Leslie's inventory position, and its plans to build that position. *See, e.g.*, ¶¶42, 50. Plaintiffs contend these statements were false when made because Leslie's was taking on more inventory than needed to meet expected customer demand, as evidenced by the letter Leslie's sent to loyalty customers.[10] ¶34. From

_____

[9] *See, e.g.*, ¶¶46, 47, 50, 51, 54, 55, 56, 60, 61, 65, 66, 67, 68, and 76.

[10] The Complaint reads as if it is directly quoting the letter, but it is actually quoting Egeck's remarks about the letter made on the May 3, 2023 earnings call. *Compare* ¶74 with ¶¶4, 34, 77. Egeck explained, "2021 and 2022, consumers were very concerned about scarcity of product during pool season, as were we. And we, at one point last year in the first quarter, actually sent a letter to our loyalty file saying, well, we couldn't guarantee product availability in the second half, and encouraged them to purchase early prior to the pool season." Ex. 7 at 17.

Gibson, Dunn & Crutcher LLP

this, Plaintiffs invite the Court to infer that Defendants were steadily increasing inventory while secretly believing no one wanted to buy it: That is not plausible, let alone compelling. There is nothing inconsistent about actively increasing inventory while also encouraging loyal customers to stock up on products that had been subject to "out of stocks" the prior two pool seasons.

For example, Plaintiffs allege that Steven Weddell, Leslie's former CFO, misled investors by stating that "we worked very hard and closely with our vendors to procure effectively as much inventory as we can to meet the heightened demand that we see today, and it's a competitive advantage. So I feel very good with our inventory position today." ¶50. In the preceding sentence, Weddell made clear that Leslie's inventory positions had increased, explaining "at the end of Q2, . . . [inventory was] . . . up $70 million or up 25%." *Id.* Even if Plaintiffs believe inventory was "excessive," there is nothing in this statement to suggest that Leslie's characterization was inaccurate. Leslie's disclosed, discussed, and followed through on its plan to grow inventory, a fact that is irreconcilable with the allegation that the Defendants knew of, and concealed, "excess" inventory.

The challenged inventory statements did not "create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiffs' allegations boil down to their disagreement with the general wisdom of Leslie's inventory strategy. That "narrative requires the Court to stretch allegations of, at most, corporate mismanagement into actionable federal securities fraud," which "is not the law." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 562 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x. 62 (2d Cir. 2015).

***Consumer Demand.*** Plaintiffs also challenge Defendants' statements about consumer demand, claiming Defendants misled investors about the strength of consumer demand.[11] But the Complaint fails to allege any contemporaneous facts that, if true, contradict Defendants' statements about consumer demand at the time they were made.

---

[11] *See, e.g.*, ¶¶41, 42, 48, 49, 53, 53, 64, 70, 72, 73.

Gibson, Dunn &
Crutcher LLP

Take, for instance, Egeck's statement that: "I think what you're seeing in our business is [the] nondiscretionary nature of the vast majority of it and recurring demand" and "in the core businesses of chemicals and equipment and parts and repair and maintenance, we have not seen any indication of a decrease in demand." ¶49. The Complaint lacks any facts or particularized allegations indicating that demand was decreasing when these statements were made, much less that *Defendants* knew demand was decreasing when these statements were made. The letter sent to loyalty customers, encouraging them to purchase seasonal products preseason, does not give rise to a plausible inference that Defendants knew demand was decreasing. The letter more plausibly supports the opposing inference: Defendants expected demand to increase and did not want their loyal customers to face "out of stocks" during peak pool season. The allegations drawn from alleged former employees do not change this analysis. Not one of the former employees claims that demand was decreasing. While the former "district manager" claims that "Leslie's maintained records of customers' purchasing histories and knew whether they were sitting on excess supplies of products," this employee does not allege Leslie's could track customers' usage and does not explain how Leslie's could possibly monitor customers' personal inventory levels without tracking customer usage. Nor does the former "district manager" *actually* allege that purchase records indicated customer demand was declining.

In sum, the Complaint alleges no facts suggesting that Leslie's understanding of consumer demand was anything but what the company disclosed.

***Strategy Statements.*** Plaintiffs challenge Defendants' statements about the Company's strategy and positioning, *see, e.g.*, ¶¶40, 45, 58, 59, 71, but these statements are untethered to Plaintiffs' blanket assertions of falsity, *see supra* at IV.A.1.a. For instance, Plaintiffs challenge Egeck's statement in the 2022 fiscal year-end press release that "we remain focused on delivering against our long-term objectives supported by the recurring non-discretionary demand of the aftermarket pool industry, the competitive advantages of our integrated network of physical and digital assets and the execution of our strategic growth initiatives." ¶58. But nothing about the ostensibly omitted adverse facts renders this statement false. The alleged

omissions do not, for example, concern Leslie's "integrated network of physical and digital assets." Nor does the alleged failure to disclose that Leslie's had more inventory than predicted demand cause Leslie's statements about "the recurring non-discretionary demand of the aftermarket pool industry" to be false.

*Risk-Factor Disclosures.* Finally, Plaintiffs challenge a risk factor related to inventory management that Leslie's included in its quarterly and annual SEC filings. ¶¶43, 62, 69. Plaintiffs offer no particularized facts to support any theory of falsity with respect to this risk factor. This category of challenged statements should be summarily dismissed.

### c. Statements of opinion are not actionable.

In assessing securities fraud claims, courts have found that, except in limited circumstances, "pure statement[s] of opinion" are generally not actionable. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021). Courts typically hold that statements prefaced with phrases like "I think" and "I believe" are non-actionable opinions because they do not "express[] certainty about a thing." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015).

Most of the challenged statements are prefaced with language that makes it clear the statement is an opinion and not an expression of certainty. *E.g.*, ¶46 ("I'm going to say we're happy with"); ¶¶51, 61, 65, 72, 73, 76 ("we believe"); ¶67 ("We feel good"); ¶¶49, 51, 64 ("I think"). A statement of opinion is only actionable if (1) the speaker did not subjectively believe the opinion, (2) the opinion includes an untrue underlying fact, or (3) the defendant omitted material information that rendered the opinion misleading. *Omnicare*, 575 U.S. at 194; *Bien v. LifeLock Inc.*, 2015 WL 12819154, at *3–4 (D. Ariz. July 21, 2015) (plaintiffs "must identify particular (and material) facts . . . whose omission makes an opinion statement misleading . . . [when read] fairly and in context"). The opinion statements challenged by Plaintiffs do not fall within any *Omnicare* exception. The Complaint does not allege facts suggesting that Defendants did not believe the accuracy of their opinions regarding the appropriate inventory strategy. Nor does the Complaint allege that any opinion contained false underlying facts.

Gibson, Dunn &
Crutcher LLP

Finally, Plaintiffs have not identified any omitted facts necessary to make Defendants' opinions not misleading. *See supra* IV.A.1.a–b.

These statements of opinion are not actionable and should be dismissed. *See* ¶¶45, 46, 48, 49, 50, 51, 53, 54, 55, 56, 60, 61, 64, 65, 67, 68, 71, 72, 73, 76.

### d. Statements of corporate optimism are not actionable.

"To be misleading, a statement must be capable of objective verification." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017). Several of the challenged statements are not "objectively verifiable" statements that can give rise to a securities fraud claim. Plaintiffs, for example, challenge statements that Leslie's is "happy with [its] current supply," ¶46, and that it "feel[s] good" about its inventory, ¶¶50, 67, 68, 76. When valuing corporations, "investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers[;] [t]his mildly optimistic, subjective assessment hardly amounts to a securities violation." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).

Statements of corporate optimism are not actionable and should be dismissed. *See* ¶¶46, 50–51, 56, 58, 67–68, 76.

### e. The challenged forward-looking statements are not actionable.

The PSLRA safe harbor immunizes from liability statements that are forward-looking and either (1) accompanied by meaningful cautionary statements, or (2) immaterial, or (3) not made with actual knowledge of falsity. *Jackson v. Microchip Tech. Inc.*, 2020 WL 1170843, at *5 (D. Ariz. Mar. 11, 2020) (citing 15 U.S.C. § 78u-5(c)(1)–(2)). Several of the challenged statements are forward-looking and not actionable.

***Forward Looking.*** Forward-looking statements can include projections of revenue or other financial terms, statements regarding plans and objectives or future economic performance, or assumptions underlying or relating to projections, plans, or future economic performance. 15 U.S.C. § 78u-5(i)(1)(A)–(D). Phrases such as "we expect" and "we intend" are indicative of a forward-looking statement. *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 935–36 (N.D. Cal. 2022). Several of the challenged statements are classically forward-

looking as they concern Leslie's future financial performance, *e.g.*, ¶¶47, 58–59, 72–73, future supply chain issues, *e.g.*, ¶¶55, 61, 65, and plans concerning Leslie's inventory strategy, *e.g.*, ¶¶55, 61.

*Meaningful Cautionary Language.* The challenged forward-looking statements were made on Leslie's earnings calls. Each of the earnings calls cautioned investors that "comments made today may include forward-looking statements which are subject to significant risks and uncertainties" and directed investors to "review the cautionary statements and risk factors contained in the company's earnings press release and recent filings with the SEC." *E.g.*, Ex. 7 at 2. Leslie's SEC filings contained risk disclosures that alerted investors to the very risks at issue here. For example, Leslie's annual report for the fiscal year 2022 warned that "past growth may not be indicative of future growth," "[w]e may not be able to successfully manage our inventory to match consumer demand," "[i]f we do not manage product inventory . . . it could adversely affect profitability," and "[i]f our sales forecasts overestimate consumer demand . . . [it] could . . . lead[] to decreased profit margins." Ex. 5 at 10–11, 13. This type of cautionary language is "meaningful." *See Wochos*, 985 F.3d at 1193 n.3; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (analyst call statements accompanied by cautionary language covered by safe harbor).

*Actual Knowledge.* Plaintiffs have not alleged any facts to suggest that Defendants made any forward-looking statements with "actual knowledge" of the falsity of their predictions. *See infra* at IV.A.2 (explaining why Plaintiffs have not adequately alleged scienter). The challenged forward-looking statements, therefore, fall under the PSLRA's safe harbor for a separate reason and cannot serve as the basis for a securities-fraud claim.

The challenged forward-looking statements are protected by the safe harbor and should be dismissed. *See* ¶¶41, 45, 47, 54, 58, 59, 61, 65, 72, 73, 76.

## 2.    The Complaint Does Not Plead Any Inference of Scienter

The Complaint fails for an independent reason as well: Plaintiffs have not, and cannot, plead that any Defendant acted with "scienter" or the required fraudulent intent.

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud," *Police*

*Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014), or deliberate recklessness, *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). Pleading scienter under the PSLRA presents a "high burden." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021). A complaint satisfies the PSLRA only if it allows for an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). The Ninth Circuit has emphasized that scienter should be evaluated with a "practical and common sense perspective." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). The key question is "whether the [Individual Defendants] knew [their] statements were false, or we[re] consciously reckless as to their truth or falsity." *Gebhart v. SEC*, 595 F.3d 1034, 1042 (9th Cir. 2017).

Plaintiffs attempt to allege scienter through an assortment of disparate allegations largely irrelevant to their theory of fraud. These allegations are far from cogent, and the competing, nonfraudulent inference is far more compelling here.

### a.    Plaintiffs do not allege any plausible motive.

The Complaint does not allege that either Egeck or Weddell had any motive to defraud investors. Absent any plausible allegation of personal benefit, Plaintiffs' theory of scienter—that Defendants knowingly increased Leslie's inventory of chlorine-based products beyond predicted customer demand, only to "offload" this excess inventory by encouraging stockpiling, which drove down future demand, while continuing to increase inventory—makes no sense. *See Nguyen*, 962 F.3d at 415 (dismissing scienter allegations, finding it "improbable that a company would stake its existence" on something "the company thought was doomed to failure"). "Allegations that are implausible do not create a strong inference of scienter." *Id.* at 408. Indeed, the Ninth Circuit routinely rejects theories of fraud that "do[] not resonate in common experience." *See id.* at 415 (courts do not need to "check [] disbelief at the door").

The Complaint's focus on Leslie's *pre-class period* secondary offerings and Defendants' *pre-class period* stock sales only underscores the lack of scienter here. ¶¶16–17, 31. Stock sales made before the alleged misstatements are irrelevant and in no way indicative

of a motive to defraud investors during the alleged class period.[12] *See Metzler*, 540 F.3d at 1067 (stock sales occurring one month before events underlying falsity were not suspicious). If anything, pre-class period stock sales support a non-fraudulent inference because a defendant committing fraud would time their stock sales to maximize their gains. *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) ("Large sales of stock *before* the class period are inconsistent with plaintiffs' theory.").

Nor does the Complaint allege that any Defendant sold stock during the alleged class period. In fact, just the opposite occurred—the Individual Defendants each *purchased* shares, which further tips the scales against any inference of scienter. Exs. 10, 11. "The net gain of shares during the class period cuts against Plaintiffs' theory that [Individual Defendants] were financially motivated to conceal information from investors." *City of Pontiac Gen. Employees Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *8 (D. Ariz. Jan. 11, 2023); *see also Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1043 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014) (reasoning that the fact that several individual defendants held more stock at the end of the class period than the beginning gave "rise to a strong inference that Defendants did not act with scienter"). Plaintiffs also imply, but do not directly allege, that the Individual Defendants' performance-based compensation provided a motive to defraud investors. But generalized financial motives held by all executives do not allow for a strong inference of scienter. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 884 ("Allegations of routine corporate objectives" are not "sufficient to allege scienter").

### b.    Plaintiffs' "former employee" allegations do not show scienter.

The Complaint includes allegations drawn from four vaguely identified "former

---

[12] The Complaint includes allegations about stock sales by Leslie's Chairman Steven Ortega (who is erroneously identified as "Michael Ortega" in the Complaint), but these allegations are irrelevant to the scienter analysis for Egeck and Weddell. *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1082 n.22 (N.D. Cal. 2001) ("no reason to consider [non-defendant] sales in determining [] scienter"); *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *17 n.5 (N.D. Cal. Mar. 24, 2014) ("no need to consider [non-defendant] stock sales").

Gibson, Dunn & Crutcher LLP

employees." ¶¶35–37. Plaintiffs do not reiterate these allegations in explicit support of the scienter portion of the complaint. And this makes sense, as these allegations cannot support an inference of scienter.

To analyze the sufficiency of confidential witness allegations, the Ninth Circuit considers (1) whether "a complaint has provided sufficient detail about a confidential witness' position within the defendant company [to] provide a basis for attributing the facts reported by that witness to the witness' personal knowledge" and (2) whether "those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge [are] themselves indicative of scienter." *Zucco*, 552 F.3d at 995; *In re Apollo Grp., Inc. Sec. Litig.*, 2011 WL 5101787, at *11 (D. Ariz. Oct. 27. 2011) (same). Plaintiffs' "former employee" allegations fail under both prongs.

***First***, these witnesses and their roles at Leslie's are not described with sufficient particularity for the Court to establish their reliability and knowledge. The Complaint does not specify when each employee worked at Leslie's, where they worked, nor what their responsibilities entailed. *See* ¶¶35–37.[13] This lack of detail is problematic, as the Court cannot assess the reliability of the former employees' allegations or whether there is a basis for attributing the facts alleged to these former employees. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (complaint must include "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged and the complaint [must] contain[] adequate corroborating details"). The Complaint also fails to "allege proper temporal proximity between the witness observations and Defendants' purportedly false or misleading statements." *Lomingkit*, 275 F. Supp. 3d at 1155–56. Instead, Plaintiffs identify in only the vaguest terms when these witnesses made these observations—for example, Plaintiffs offer no allegations about how the timing of the former

---

[13] Moreover, Leslie's "general managers" are retail "store managers," and Leslie's has more than 1,000 retail locations of varying sizes and with different inventory turnover rates. *See* Ex. 9 at 17. The Court cannot infer from the comments of one former "general manager" in an undisclosed location that *all* of Leslie's retail locations were experiencing inventory issues.

Gibson, Dunn &
Crutcher LLP

inventory planner's allegations connects to any of the alleged misstatements. ¶36. This is fatal to Plaintiffs' "former employee" allegations as an alleged misstatement must be false when made.

**Second**, even if these former employee allegations were reliable, their allegations are not indicative of scienter. Not one of these "former employees" claims to have had *any* interactions with the Individual Defendants. *Intuitive Surgical, Inc.*, 759 F.3d at 1063 (rejecting confidential witness statements because the "witnesses lack first hand knowledge regarding what the individual defendants knew or did not know"). While the former allocations and planning analyst alleges that "by late 2022, it was internally recognized that the Company's financial projections for 2023 were unachievable given that there was too much inventory in the distribution centers," the former allocations and planning analyst does not allege how this would decrease consumer demand or *who* within Leslie's recognized this, much less that either Egeck or Weddell were informed of this possibility. *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *10 (D. Ariz. May 25, 2023) (rejecting confidential witness allegations where "none allege any interaction with the Officers or that any of the Officers knew about any misconduct").

Even setting this aside, the former employees' claims do not support scienter. Each of the former employees' allegations boils down to the assertion that Leslie's had excess inventory and some unidentified number of stores did not have sufficient space to store an increased amount of chlorine-based chemicals. These allegations are not inconsistent with what Defendants publicly told the market—Leslie's was pursuing a strategy of investing in inventory and pushing that inventory to stores so it would be on hand for peak pool season. Ex. 2 at 5; Ex. 4 at 17. Each quarter, Leslie's disclosed its increased inventory. *None* of the former employees reliably alleges that Leslie's knew something different.

### c.    Plaintiffs' core operations allegations do not establish scienter.

Plaintiffs attempt to allege scienter based on "[t]he fraud . . . involv[ing] one of Leslie's core product offerings" and the Individual Defendants' senior positions. ¶¶93–95. But Plaintiffs

Gibson, Dunn & Crutcher LLP

state nothing more than the obvious with their core operations allegations: Pool chemical inventory is important to a pool supply business. *Id.* That is not enough.

"The core operations theory of scienter relies on the principle that 'corporate officers have knowledge of the critical core operations of their companies.'" *Intuitive Surgical*, 759 F.3d at 1062. But core operations allegations only "independently satisfy the PSLRA" in two circumstances: (1) "whe[n] [these allegations] are particular and suggest that defendants had actual access to the disputed information" and (2) "in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *S. Ferry LP*, 542 F.3d at 785–86. "Proof under this theory is not easy," *Intuitive Surgical*, 759 F.3d at 1062, and it is not alleged here. At best, Plaintiffs made "vague allegations" based on the "general importance" of matters to the business, which are not sufficient. *Alich v. Opendoor Techs. Inc.,* 2024 WL 839146, at *12 (D. Ariz. Feb. 28, 2024) (issue was "core" to defendants' business but allegations "insufficient" to allege a strong inference of scienter).

The Complaint contains no particularized allegations that demonstrate the Individual Defendants had *actual* access to information that contradicted the challenged statements about Leslie's anticipated consumer demand or its inventory. The Complaint does not even allege there *was* internal information showing that Leslie's inventory exceeded anticipated demand. Nor do the former employee accounts show the Individual Defendants had access to information that undermined their public statements. ¶¶35–37. At most, Plaintiffs allege that Egeck and Weddell had "knowledge and awareness" of Leslie's inventory and that they "monitored Leslie's inventory" and consumer demand. ¶¶106–07. But alleging that Defendants monitored and were generally aware of information does *not* rise to the level of a specific admission by an executive, and does not adequately allege an inference of scienter. *E.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (rejecting allegations that "merely allege" defendant "tracked patient demand using data provided by [insiders], . . . without specific reference to the contents of those reports").

This also is not the "rare" circumstance where it would be absurd to assume that Defendants did not know about information that contradicted their public statements. Here, there are *no allegations* that this information even existed when the challenged statements were made. *See Intuitive Surgical*, 759 F.3d at 1063. In fact, Plaintiffs' own allegations concede that Leslie's was not aware that consumer demand was changing until close to the end of Leslie's third quarter for 2023 when Leslie's conducted customer surveys. ¶116. Further undercutting any inference of scienter, Defendants then promptly disclosed this information to investors in a press release announcing Leslie's preliminary earnings results on July 13, 2023.

### d. Defendants' own statements do not establish scienter.

The Complaint alleges that the Defendants' own statements about Leslie's inventory levels and "the factors affecting supply of and demand for chlorine-based products" demonstrate Defendants' knowledge of "granular" inventory issues and their fraudulent intent. ¶¶96, 97. But simply knowing about a topic is insufficient to establish scienter under the PSLRA. Instead, a plaintiff must plead particularized allegations showing that speakers were *aware* of contradictory internal information. *See Opendoor Techs. Inc.*, 2024 WL 839146, at *13 (plaintiffs failed to allege that defendants had contradictory internal information necessary to draw a cogent inference of scienter). None of the public statements highlighted in the Complaint as showing Defendants' "granular knowledge" of Trichlor sales or industry trends demonstrate that Egeck and Weddell had internal, contradictory information about customers' demand for chlorine-based products. ¶¶93–108. While a former district manager claims that "Leslie's maintained records of customers' purchasing histories and knew whether they were sitting on excess supplies of products," the former district manager does not allege that the Individual Defendants had access to this information or even if Leslie's customers *actually* had excess products. ¶37.

Moreover, Plaintiffs point to some of the same statements that they challenge as false and misleading as establishing a strong inference of scienter. *Compare, e.g.*, ¶65, *with* ¶106. Scienter cannot "be inferred merely from the allegedly fraudulent statements themselves" because that "would eliminate the need to plead scienter." *See In re Federated Dep't Stores,*

1    *Inc., Sec. Litig.*, 2004 WL 444559, at *7 (S.D.N.Y. Mar. 11, 2004); *Reidinger v. Zendesk*, 2021

2    WL 796261, *10 (N.D. Cal. Mar. 2, 2021) ("The scienter requirement exists because falsity

3    does not always equal fraud.").

4        **e.  The Sarbanes Oxley certifications do not establish scienter.**

5          Plaintiffs allege that Egeck's and Weddell's signatures on Sarbanes-Oxley Act

6    certifications "further evidence" and "enhance" an inference of scienter. ¶111. But

7    "[b]oilerplate language in a corporation's 10–K form, or required certifications under

8    Sarbanes–Oxley . . . add nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1003–

9    04; *see also Bajjuri*, 641 F. Supp. 3d at 762.

10        **f.  The competing, non-fraudulent inference is far more compelling.**

11          "A complaint will survive a motion to dismiss 'only if a reasonable person would deem

12    the inference of scienter cogent and at least as compelling as any opposing inference one could

13    draw from the facts alleged.'" *First Solar Inc.*, 2023 WL 155861, at *6  (citations omitted).

14    Courts must balance fraudulent inferences that can be drawn from a complaint with competing

15    nonfraudulent inferences. Here, the nonfraudulent inference—that Leslie's pursued a rational

16    business strategy to maximize its inventory in order to capture increased demand only to be

17    surprised by changing customer preferences and unusually bad weather—is far more

18    compelling than Plaintiffs' theory of fraud. Plaintiffs allege that Defendants pursued a strategy

19    of intentionally increasing Leslie's inventory beyond customer demand, only to seek to

20    "offload" product on customers while continuing to increase inventory, without any individual

21    financial motive or illicit profit. That is illogical.

22          At bottom, this is not a securities fraud case. This is just a case about a company building

23    out its inventory to meet reasonably anticipated demand in the face of supply chain challenges,

24    only to change course when this inventory strategy did not pan out. "Honest optimism followed

25    by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi*

26    *v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

27        **3.    The Complaint Fails to Plead Loss Causation**

28

Gibson, Dunn &
Crutcher LLP

21

Plaintiffs' Section 10(b) claim fails for a third, independent reason: Plaintiffs fail to adequately plead loss causation. To plead loss causation, Plaintiffs must demonstrate that an economic loss was caused by the "defendant's misstatement, as opposed to some other fact." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021). In other words, Plaintiffs must trace their alleged loss back to "the very facts about which the defendant lied." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013). This requires pleading particularized facts establishing that "after purchasing her shares and before selling . . . (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). Plaintiffs purport to rely on a "corrective disclosure" theory claiming that the "truth concealed by Defendants' misrepresentations and omissions was revealed on July 13, 2023," when Leslie's disclosed a sales decline and a drop in gross profits for the third quarter of 2023. ¶8. Plaintiffs quote Leslie's press release announcing its preliminary financial results for the third quarter, which attributed lower financial results to "abnormal weather" and "customer surveys conducted towards the end of the quarter" that indicated customers were stockpiling products. ¶116.

As a threshold matter, Plaintiffs fail to "specify which of the Defendants' statements were [revealed to be] untrue" by these subsequent disclosures. *Apollo*, 774 F.3d at 608. Instead, Plaintiffs simply ask the Court to assume that the July 13, 2023 "corrective disclosure[]" was "directly related" to all 32 challenged statements. ¶119. That is not enough. The Ninth Circuit rejected a similar loss causation theory where the plaintiffs "lump[ed] together more than 60 alleged misstatements" but the complaint failed to adequately link with particularized factual allegations that the revelation of the truth caused "the inflation attributable to the misstatements to dissipate." *Irving*, 998 F.3d at 407; *cf. Cupat v. Palantir Tech., Inc.*, 2023 WL 2585298, (D. Colo. Mar. 31, 2024) (dismissing complaint and criticizing plaintiffs' "puzzle pleading," noting "judges are not like pigs, hunting for truffles buried in the parties' pleadings" (internal quotation marks omitted)). The Complaint should be dismissed for the same reason.

In any event, on their face, Plaintiffs' allegations fail to establish that the revelation of

any "truth" about Defendants' alleged misstatements caused Plaintiffs' purported losses. Indeed, the information that allegedly caused the drop—Leslie's announcing a sales decline and drop in gross profits, ¶8—has nothing to do with any of the challenged statements. *See In re BofI Holding*, 977 F.3d at 790 (a corrective disclosure must reveal "new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading"). None of the challenged statements discuss Leslie's anticipated sales or profits; they focus on increasing inventory levels. Accordingly, the "corrective disclosure" could not possibly have revealed the "truth" about any aspect of the challenged statements. *Arkansas Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 102–04 (2d Cir. 2023) (finding a "mismatch" between the disclosure and the challenged statements will "sever the link between backend price drop and front-end misrepresentation"); *see also First Solar Inc.*, 2023 WL 155861, at *4 (finding alleged corrective disclosure that the company lost market share did not relate to the alleged misleading statements about the companies' pipeline as "[o]ne relates to the share of existing projects and the other to new opportunities"). Nor can Plaintiffs argue that the July 13, 2023 press release revealed information that rendered prior statements false or misleading when made. Plaintiffs cannot argue that Defendants knew, but failed to disclose, that there would be prolonged abnormal weather patterns in the second and third quarters for fiscal year 2023. And Plaintiffs' own allegations indicate that "customer surveys conducted towards the end of the [third] quarter" revealed the customer stockpiling issues. ¶116. Thus, by their own account, the newly discovered information from consumer surveys cannot show that statements made during the alleged class period were false or misleading when made. *Opendoor Techs. Inc.*, 2024 WL 839146, at *15 (finding no loss causation when the alleged corrective disclosure "merely confirmed a previous disclosure").

## B.    Plaintiffs Fail to State a Claim Under Section 20(a)

Section 20(a) of the Exchange Act imposes control-person liability on individual defendants only if a plaintiff can establish "a primary violation of underlying federal securities laws . . . and then show that the defendant exercised actual power over the primary violator." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014). Here, Plaintiffs fail to

allege a primary violation of Section 10(b) and Rule 10b-5, which means their Section 20(a) claims necessarily fail as well.

## V.  CONCLUSION

The Complaint should be dismissed in its entirety and with prejudice.


Dated: April 22, 2024                            SNELL & WILMER L.L.P.


                                          By: */s/Megan Carrasco*
                                              Patricia Lee Refo
                                              Megan Carrasco
                                              One East Washington Street
                                              Suite 2700
                                              Phoenix, Arizona 85004-2556


                                          GIBSON, DUNN & CRUTCHER LLP


                                          By: */s/ Monica K. Loseman*
                                              Monica K. Loseman *(pro hac vice)*
                                              Allison K. Kostecka *(pro hac vice)*
                                              1801 California Street, Suite 4200
                                              Denver, CO 80202-2642

                                              *Counsel for Defendants Leslie's, Inc.,
                                              Michael R. Egeck, and Steven M.
                                              Weddell*

Gibson, Dunn &
Crutcher LLP

## <u>CERTIFICATE OF CONFERRAL</u>

On April 18, 2024, counsel for the Defendants notified counsel for the Plaintiffs of the issues asserted in this motion. The parties conferred but were unable to agree. *See* ECF No. 5 at 2.

> */s/ Monica K. Loseman*_____
> Monica K. Loseman

Gibson, Dunn &
Crutcher LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 22, 2024

*/s/ June R. James*

Gibson, Dunn & Crutcher LLP

26